Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:  bheikali@faruqilaw.com

[Additional Captions on Signature Page]

*Attorney for Plaintiff David Gordon*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID GORDON, Individually and on
Behalf of All Others Similarly Situated,

          Plaintiff,

    v.

SHUTTERFLY, INC., WILLIAM J.
LANSING, ELIZABETH SARTAIN,
BRIAN THOMAS SWETTE, THOMAS D.
HUGHES, EVA MANOLIS, HENRY
TAYLOE STANSBURY, ANN MATHER,
ELIZABETH S. RAFAEL, RYAN
O'HARA and MICHAEL P. ZEISSER,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  3:19-cv-04335

**CLASS ACTION COMPLAINT FOR
VIOLATIONS OF SECTIONS 14(a) AND
20(a) OF THE SECURITIES
EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

---

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff David Gordon ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Shutterfly, Inc. ("Shutterfly" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Shutterfly, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Transaction") between Shutterfly and Apollo Global Management, LLC ("Apollo").

2.      On June 10, 2019, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $51.00 in cash for each share of Shutterfly stock they own (the "Merger Consideration").

3.      On July 19, 2019, in order to convince Shutterfly shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form PREM14A Preliminary Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. The materially incomplete and misleading Proxy violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially

- 1 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1  incomplete and misleading.

2      5.      In particular, the Proxy contains materially incomplete and misleading information

3  concerning: (i) the financial projections for the Company that were prepared by the Company and

4  relied on by Defendants in recommending that Shutterfly shareholders vote in favor of the

5  Proposed Transaction; and (ii) the summary of certain valuation analyses conducted by

6  Shutterfly's financial advisor, Morgan Stanley & Co. LLC. ("Morgan Stanley"), in support of its

7  opinion that the Merger Consideration is fair to shareholders, on which the Board relied.

8      6.      It is imperative that the material information that has been omitted from the Proxy

9  is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an

10  informed decision regarding the Proposed Transaction.

11      7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against

12  Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants'

13  violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9).

14  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction

15  and taking any steps to consummate the Proposed Transaction unless, and until, the material

16  information discussed below is disclosed to Shutterfly shareholders sufficiently in advance of the

17  vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to

18  recover damages resulting from the Defendants' violations of the Exchange Act.

19                          **JURISDICTION AND VENUE**

20      8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

21  Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

22  violations of Section 14(a) and 20(a) of the Exchange Act.

23      9.      Personal jurisdiction exists over each Defendant either because the Defendant

24  conducts business in or maintains operations in this District, or is an individual who is either

25  present in this District for jurisdictional purposes or has sufficient minimum contacts with this

26  District as to render the exercise of jurisdiction over Defendant by this Court permissible under

27

28

- 2 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

1  traditional notions of fair play and substantial justice.

2     10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

3  78aa, as well as under 28 U.S.C. § 1391, because Shutterfly maintains its principal executive

4  offices in this District.

5                                    **PARTIES**

6     11.    Plaintiff is, and at all relevant times has been, a holder of Shutterfly common stock.

7     12.    Defendant Shutterfly is a Delaware corporation and maintains its principle

8  executive offices at 2800 Bridge Parkway, Redwood City, California 94065.  Shutterfly's common

9  stock is traded on the NASDAQ under the ticker symbol "SFLY."

10    13.    Individual Defendant William J. Lansing is Shutterfly's Chairman and has been a

11 director of Shutterfly since February 2017.

12    14.    Individual Defendant Elizabeth Sartain has been a director of Shutterfly since

13 December 2016.

14    15.    Individual Defendant Brian Thomas Swette has been a director of Shutterfly since

15 September 2009.

16    16.    Individual Defendant Thomas D. Hughes has been a director of Shutterfly since

17 July 2015.

18    17.    Individual Defendant Eva Manolis has been a director of Shutterfly since October

19 2016.

20    18.    Individual Defendant Henry Tayloe Stansbury has been a director of Shutterfly

21 since December 2016.

22    19.    Individual Defendant Ann Mather has been a director of Shutterfly since May 2013.

23    20.    Individual Defendant Elizabeth S. Rafael has been a director of Shutterfly since

24 June 2016.

25    21.    Individual Defendant Ryan O'Hara is Shutterfly's President and CEO and has been

26 a director of Shutterfly since June 2019.

27

28
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

22.    Individual Defendant Michael P. Zeisser has been a director of the Company since March 2013.

23.    The Individual Defendants referred to in paragraphs 13-22 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Shutterfly (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

25.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable. As of June 30, 2019, there were approximately 35,000,000 shares of Shutterfly common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of Shutterfly will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)    whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

- 4 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.     The Proposed Transaction

26.     Shutterfly is a retailer and manufacturing platform for personalized products and communications. The Company targets both consumers and businesses with its products. The Company's consumer brands include Shutterfly Consumer, Tiny Prints Boutique, BorrowLenses,

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Groovebook, and Lifetouch. The Company's business brand is Shutterfly Business Solutions. In addition to photos, the Company offers a cloud photo management service.

27.     On June 10, 2019, Shutterfly and Apollo announced the Proposed Transaction in a press release which states, in pertinent part:

REDWOOD CITY, Calif.--(BUSINESS WIRE)--Shutterfly, Inc. (Nasdaq: SFLY) ("Shutterfly" or the "Company"), a leading retailer and manufacturing platform dedicated to helping capture, preserve, and share life's important moments, today announced that it has entered into a definitive agreement with affiliates of certain funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, LLC (together with its consolidated subsidiaries, "Apollo") (NYSE: APO), a leading global alternative investment manager, pursuant to which the Apollo Funds will acquire all the outstanding shares of Shutterfly for $51.00 per share in cash, or enterprise value of approximately $2.7 billion.

The $51.00 per share cash consideration represents a premium of 31% when compared to Shutterfly's unaffected closing stock price of $38.91 on April 23, 2019, the last trading day before a media report was published speculating that Apollo Funds were considering a bid for the Company. The Shutterfly Board of Directors unanimously approved the agreement with the Apollo Funds and recommends that Shutterfly stockholders vote in favor of the transaction.

"Earlier this year, Shutterfly announced the formation of a Strategic Review Committee to continue the Board of Directors' ongoing review of strategic alternatives for the Company," said William Lansing, Shutterfly's Chairman of the Board. "We ran a broad and comprehensive process, engaging with a significant number of potential buyers, and are pleased that the process culminated in a transaction that maximizes value for Shutterfly stockholders. We look forward to working closely with Apollo as we continue to build a compelling service that enables deeper, more personal relationships for our customers, and to advance our digital and manufacturing capabilities to support sustainable growth."

"Shutterfly has cultivated a deep connection with customers through its three divisions, Shutterfly Consumer, Shutterfly Business Solutions and Lifetouch, each of which we view as exceptional platforms with leading positions in their respective segments," said David Sambur, Senior Partner at Apollo. "At a time when billions of photos are taken every day, Shutterfly has led the charge as a pioneer of personalized photo products and school photography, helping consumers capture, preserve and share life's most important moments. We are excited to work with Shutterfly's leadership and talented team of dedicated employees to grow each of the businesses and further enhance customer relationships across both Shutterfly and Lifetouch."

Lansing continued, "This transaction is a testament to our outstanding team of

- 6 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

talented employees and the company they have built. What began as a digital photo printing company is now a large and diversified business that has successfully evolved with our customers. As we enter this exciting new chapter for Shutterfly, Apollo is an ideal strategic partner, as they will provide additional resources and industry knowledge while we continue to work on our important business initiatives."

In a separate press release issued today, Shutterfly announced the appointment of Ryan O'Hara as its President and Chief Executive Officer, effective June 24, 2019.

**Transaction Details**

The transaction is expected to close by early fourth quarter 2019. The transaction is subject to customary closing conditions, including approval by Shutterfly stockholders and receipt of clearance under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

Upon completion of the transaction, Shutterfly will become a privately held company, and its shares will no longer be listed on the NASDAQ Global Select Market.

**Advisors and Financing Providers**

Morgan Stanley & Co. LLC is acting as financial advisor to Shutterfly, and Fenwick & West LLP is acting as its legal counsel.

**About Shutterfly**

Shutterfly, Inc. is a leading retailer and manufacturing platform for personalized products and communications. Founded in 1999, Shutterfly, Inc. has three divisions: Shutterfly Consumer, Lifetouch, and Shutterfly Business Solutions. Shutterfly Consumer and Lifetouch help consumers capture, preserve, and share life's important moments through professional and personal photography, and personalized products. The Shutterfly brand brings photos to life in photo books, gifts, home décor, and cards and stationery. Lifetouch is the national leader in school photography, built on the enduring tradition of "Picture Day", and also serves families through portrait studios and other partnerships. Shutterfly Business Solutions delivers digital printing services that enable efficient and effective customer engagement through personalized communications. For more information about Shutterfly, Inc. (Nasdaq: SFLY), visit www.shutterflyinc.com.

**About Apollo**

Apollo is a leading global alternative investment manager with offices in New York, Los Angeles, San Diego, Houston, Bethesda, London, Frankfurt, Madrid, Luxembourg, Mumbai, Delhi, Singapore, Hong Kong, Shanghai and Tokyo.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

Apollo had assets under management of approximately $303 billion as of March 31, 2019 in private equity, credit and real assets funds invested across a core group of nine industries where Apollo has considerable knowledge and resources. For more information about Apollo, please visit www.apollo.com.

28.    Shutterfly is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

29.    If the false and/or misleading Proxy is not remedied and the Proposed Transaction is consummated, Defendants will directly and proximately have caused damages and actual economic loss (i.e. the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## II.    The Materially Incomplete and Misleading Proxy

30.    On July 19, 2019, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Materiality of Financial Projections*

31.    A company's financial forecasts are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

1  approve the transaction. Here, the Proxy discloses one of the reasons the Board recommends the

2  merger is because "[o]ur Board considered certain forecasts prepared by and on bases reflecting

3  the best currently available estimates and judgements of our senior management , including both

4  the 'base case' and 'sensitivity case' projections, which projections (the "Management

5  Projections") were also made available to representatives of Morgan Stanley for purposes of

6  rendering its fairness opinion to our Board and performing its related financial analyses . . . ."

7  Proxy 39.

8      32.    When soliciting proxies from shareholders, a company must furnish the

9  information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101). Item 14 of Schedule

10  14A sets forth the information a company must disclose when soliciting proxies regarding mergers

11  and acquisitions. In regard to financial information, companies are required to disclose "financial

12  information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-

13  K. *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

14      33.    Under Item 10 of Regulation S-K, companies are encouraged to disclose

15  "management's projections of future economic performance that have a reasonable basis and are

16  presented in an appropriate format." 17 C.F.R. § 229.10(b). Although the SEC recognizes the

17  usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to

18  assure that the choice of items projected is not susceptible of misleading inferences through

19  selective projection of only favorable items." 17 C.F.R. § 229.10(b)(2).

20      34.    In order to facilitate investor understanding of the Company's financial projections,

21  the SEC provides companies with certain factors "to be considered in formulating and disclosing

22  such projections[,]" including:

23      (i) When management chooses to include its projections in a Commission filing,
24      *the disclosures accompanying the projections should facilitate investor
         understanding of the basis for and limitations of projections.* In this regard investors
         should be cautioned against attributing undue certainty to management's
25      assessment, and the Commission believes that investors would be aided by a
         statement indicating management's intention regarding the furnishing of updated
26      projections. *The Commission also believes that investor understanding would be
         enhanced by disclosure of the assumptions which in management's opinion are*

27

28
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

*most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

(ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

35.    Here, Shutterfly's shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering that in making its recommendation that shareholders vote in favor of the Proposed Transaction, the Board specifically relied on the financial forecasts to determine "that the Merger Agreement and the transactions contemplated thereby, including the Merger, are fair, advisable to and in the best interest of Shutterfly and our stockholders[.]"  Proxy 38.

36.    As discussed further below, the non-GAAP financial projections here do not provide Shutterfly's shareholders with a materially complete understanding of the assumptions and key factors considered in developing financial projections, which assumptions, factors and other inputs the Board reviewed.

***The Financial Projections Relied on by the Board***

37.    The Proxy discloses that the Company's management, in connection with the merger, prepared two sets of projections, "including both the 'base case' and 'sensitivity case' projections[.]" *Id.* at 39. These projections were given to both the Board and Morgan Stanley. *Id.*

38.    The Proxy further discloses that the "information was prepared on a reasonable basis, reflected the best estimates and judgments available to [the Company's] management at the time and presented, to the best of [Shutterfly's] management's knowledge and belief, the expected course of action and [the Company's] expected future financial performance as of the date such information was prepared."  *Id.* at 53.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

39.    The Proxy goes on to disclose, *inter alia*, forecasted values for projected non-GAAP (Generally Accepted Accounting Principles) financial metrics for 2019 through 2024 for Adjusted EBITDA but fails to provide (i) the line items used to calculate this non-GAAP metric or (ii) a reconciliation of this non-GAAP projection to its most comparable GAAP measure. *Id.* at 55.

40.    The Proxy defines Adjusted EBITDA as "earnings before interest income/expense, taxes, and depreciation and amortization, excluding the effect of stock-based compensation expense. Adjusted EBITDA is a non-GAAP financial measure and is not intended to represent, or to be used, as a substitute for operating income and net income as a measure of operating performance or for cash flows from operations as a measure of liquidity." *Id.* at 55 n.2. Nevertheless, the Proxy fails reconcile Adjusted EBITDA to its most comparable GAAP measure or disclose the line items used to calculate Adjusted EBITDA, rendering the Proxy materially false and/or misleading. *Id.*

41.    Thus, the Proxy's disclosure of the non-GAAP financial measure provides an incomplete and materially misleading understanding of the Company's future financial prospects and the inputs and assumptions which those prospects are based upon. It is clear that those inputs and assumptions were in fact forecasted and utilized in calculating the non-GAAP measure disclosed and relied on by the Board to recommend the Proposed Transaction in violation of Section 14(a) of the Exchange Act.

42.    The financial projections disclosed on page 55 of the Proxy violate Section 14(a) of the Exchange Act because: (i) the use of such forecasted non-GAAP financial measure alone violates SEC Regulation G, as a result of Defendants' failure to reconcile that non-GAAP measure to its closest GAAP equivalent or otherwise disclose the specific financial assumptions and inputs used to calculate the non-GAAP measure; and (ii) they violate SEC Regulation 14a-9 because they are materially misleading, as shareholders are unable to discern the veracity of the financial projections.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

43.    As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

### *The Financial Projections Violate Regulation G*

44.    The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3]

45.    Defendants must comply with Regulation G.  More specifically, the company must disclose the most directly comparable GAAP financial measure <u>and</u> a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

46.    Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the frequent

---

[1]    Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure.  17 C.F.R. § 244.101(a)(1).

[2]    Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]    SEC, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (Jan. 22, 2003), *available at* https://www.sec.gov/rules/final/33-8176.htm ("SEC, *Final Rule*").

[4]    SEC, *Final Rule.*

[5]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies*

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

use by publicly traded companies of unique company-specific non-GAAP financial measures (as

Shutterfly included in the Proxy here) implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

47.     The SEC has required compliance with Regulation G, including reconciliation

requirements in other merger transactions. *Compare Youku Tudou Inc., et al.*, Correspondence 5

(Jan. 11, 2016) (Issuer arguing that Rule 100(d) of Regulation G does not apply to non-GAAP

financials relating to a business combination),[7] *with Youku Tudou Inc., et al.*, SEC Staff Comment

Letter 1 (Jan. 20, 2016) ("[The SEC] note[s] that your disclosure of projected financial information

is not in response to the requirements of, or pursuant to, Item 1015 of Regulation M-A and is thus

not excepted from Rule 100 of Regulation G.");[8] *see Harbin Electric, Inc.*, Correspondence 29

---

*Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[6]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

[7]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000110465916089133/filename1.htm.

[8]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000000000016062042/filename1.pdf.

- 13 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

(Aug. 12, 2011) ("Pursuant to the requirements of Regulation G, we have added a reconciliation of actual and projected EBIT to GAAP net income . . . .").[9]

48.    Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a).  Thus, in order to bring the Proxy into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

### The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9

49.    In addition to the Proxy's violation of Regulation G, the lack of reconciliation or, at the very least, the line items utilized in calculating the non-GAAP measure renders the financial forecasts disclosed materially misleading as shareholders are unable to understand the differences between the non-GAAP financial measure and its most comparable GAAP financial measure. Nor can shareholders compare the Company's financial prospects with similarly situated companies.

50.    Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading for the reasons discussed above.  Indeed, Defendants acknowledge that Non-GAAP financial measure "should not be viewed as a substitute for GAAP financial measures, and may be different from non-GAAP financial measures used by other companies. Furthermore, there

---

[9]    *Available at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/filename1.htm. *See also Actel Corp.*, SEC Staff Comment Letter 2 (Oct. 13, 2010) ("Opinion of Actel's Financial Advisor, page 24 . . . This section includes non-GAAP financial measures.  Please revise to provide the disclosure required by Rule 100 of Regulation G."), *available at* https://www.sec.gov/Archives/edgar/data/907687/000000000010060087/filename1.pdf. *See also The Spectranetics Corp.*, SEC Staff Comment Letter 1 (July 18, 2017) ("Item 4. The Solicitation or Recommendation Certain Spectranetics Forecasts, page 39 . . . [P]rovide the reconciliation required under Rule 100(a) of Regulation G"), *available at* https://www.sec.gov/Archives/edgar/data/789132/000000000017025180/filename1.pdf.  The SEC Office of Mergers and Acquisitions applied Regulation G in these transactions, which reflect the SEC's official position. Any claim that the SEC has officially sanctioned the use of non-GAAP financial forecasts for business combinations when the Board itself created and relied on such non-GAAP forecasts to recommend a transaction such as the Proposed Transaction is incorrect. The SEC's website provides certain unofficial guidance for certain matters, called Compliance and Disclosure Interpretations ("C&DI's") which, through the use of Q&As, reflect the views of particular SEC staff and on which certain issuers have in the past claimed an exemption from Regulation G.  The SEC itself expressly disclaims C&DI's as they are not regulations that have been reviewed by the SEC, and the SEC expressly states that they are not binding and should not be relied on. *See* www.sec.gov/divisions/corpfin/cfguidance.shtml.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

1    are limitations inherent in non-GAAP financial measures, because they exclude charges and

2    credits that are required to be included in a GAAP presentation. Accordingly, these non-

3    GAAP financial measures should be considered together with, and not as an alternative to,

4    financial measures prepared in accordance with GAAP." Proxy 54.

5         51.    As such, financial projections are plainly material, and shareholders would clearly

6    want a complete and non-misleading understanding of those projections.

7         52.    In order to cure the materially misleading nature of the projections under SEC Rule

8    14a-9 as a result of the omitted information on page 55, Defendants must provide a reconciliation

9    table of the non-GAAP financial measure to its most comparable GAAP measure.

10             ***The Materially Misleading Financial Analyses***

11        53.    The summary of the valuation methodologies utilized by Morgan Stanley,

12   including the utilization of certain of the non-GAAP financial projections described above, in

13   connection with its valuation analyses, (*id.* at 45) is misleading in violation of Regulation 14a-9.

14   The opacity concerning the Company's internal projections renders the valuation analyses

15   described below materially incomplete and misleading, particularly as companies formulate non-

16   GAAP metrics differently. Once a proxy discloses internal projections relied upon by the Board,

17   those projections must be complete and accurate.

18        54.    With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Proxy fails

19   to disclose when the selected transactions were announced, when (and if) the transactions closed,

20   the market value of the transactions, and the individual multiples for each transaction.

21        55.    With respect to Morgan Stanley's *Premiums Paid Analysis*, the Proxy fails to

22   disclose the transactions identified by Morgan Stanley, the market value of each transaction, when

23   the selected transaction was announced, when (and if) the transaction closed, and the individual

24   premia in each transaction.

25        56.    With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets*

26   analysis, the Proxy fails to disclose the individual price targets and the sources thereof.

27

28
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

57.     With respect to Morgan Stanley' *Discounted Cash Flow Analysis* ("DCF"), the Proxy states that Morgan Stanley performed two DCFs, one for the management projections and one for the management sensitivity projections, by summing the present values of the expected unlevered free cash flows the Company is expected to generate for the years 2019 through 2024. *Id.* at 48. In order to calculate the terminal values, Morgan Stanley applied a perpetual growth rate of 0% to 2% for the management projections and a (1%) to 1% perpetual growth rate for the management sensitivity projections. *Id.* Morgan Stanley used a discount rate range of 7.3% to 8.6%, reflecting the Company's weighted average cost of capital. *Id.*

58.     The Company does not provide the information Morgan Stanley utilized in either of the DCFs performed in the *Discounted Cash Flow Analysis*. The Company did not disclose the values Morgan Stanley calculated for the ranges of terminal values, any of the inputs that went into calculating the Company's weighted average cost of capital, the inputs and assumptions that went into selecting the perpetuity growth rate ranges nor the number of outstanding shares on a fully diluted basis. Additionally, the Proxy does not disclose what, if any, enterprise adjustments were made to the present value of the cash flows.

59.     Since information was omitted, shareholders are unable to discern the veracity of Morgan Stanley's *Discounted Cash Flow Analysis*.  Without further disclosure, shareholders are unable to compare Morgan Stanley's calculations with the Company's financial projections. The absence of any single piece of the above information renders Morgan Stanley's *Discounted Cash Flow Analysis* incomplete and misleading.  Thus, the Company's shareholders are being materially misled regarding the value of the Company.

60.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

include "the appropriate discount rate, and the terminal value . . . ." *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

61.     The failure to provide the above information is all the more concerning because the implied equity value per share when using the management projections was $55.89 - $90.54, far above the Merger Consideration of $51.00 per share. Therefore, in order for Shutterfly shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

62.     In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction from Shutterfly shareholders.

63.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

64.     Further, failure to remedy the deficient Proxy and consummate the Proposed Transaction will directly and proximately cause damages and actual economic loss to shareholders

- 17 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

(i.e. the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

### COUNT I
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

65.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

67.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

68.     The failure to reconcile the non-GAAP financial measure included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

69.     As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e. the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares

- 18 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

## COUNT II
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).

72.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

73.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

74.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

misstated or omitted from the Proxy but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

75.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

76.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

77.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

78.    Shutterfly is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

79.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

80.    As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e. the difference between

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

### COUNT III
**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

81.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

82.     The Individual Defendants acted as controlling persons of Shutterfly within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors and/or officers of Shutterfly, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

83.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing the Proxy.

85.     In addition, as the Proxy sets forth at length, and as described herein, the Individual

- 21 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

86.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

87.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.    Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing and to award damages arising from proceeding with the Proposed Transaction;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

1

**JURY DEMAND**

2

Plaintiff demands a trial by jury on all issues so triable.

3

Dated:  July 29, 2019

4

Respectfully submitted,

5

**FARUQI & FARUQI, LLP**

6

**OF COUNSEL:**

By:  */s/ Benjamin Heikali*
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: 424.256.2885
Email: bheikali@faruqilaw.com

7

**FARUQI & FARUQI, LLP**

8

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

9

10

*Counsel for Plaintiff David Gordon*

11

12

*Counsel for Plaintiff David Gordon*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-04335

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, David Gordon ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.   Plaintiff has reviewed a draft complaint against Shutterfly, Inc. ("Shutterfly") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.   Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.   Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.   Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.   Plaintiff's transactions in Shutterfly securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.   In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7.   Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 25th day of July, 2019.

David Gordon

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 10/12/18 | 250 |
| | | |
| | | |